UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

AHMAD ATIYEH,

                                             Plaintiff,

    v.                                                   5:16-CV-392 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                             Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
SIXTINA FERNANDEZ, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for child's insurance benefits and Supplemental Social Security Income ("SSI") benefits on November 13, 2013, alleging disability beginning June 11, 2009. (Administrative Transcript ("T") at 13, 206-22). The applications were denied initially on January 7, 2014. (T. 67-86). Administrative Law Judge ("ALJ") Elizabeth W. Koennecke held a hearing on June 29, 2015, at which plaintiff testified. (T. 28-42). The ALJ held a supplemental hearing on October 28, 2015, at which Vocational Expert ("VE") Robert Baker testified. (T. 43-51). On

November 19, 2015, the ALJ found plaintiff was not disabled. (T. 10-27). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 18, 2016. (T. 1-4).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment

2

which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id*.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from

3

both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

As of the date of the administrative hearing on March 6, 2014, plaintiff was 23 years old. (T. 32). He resided with his father, who took care of all of the cooking, grocery shopping, and other household responsibilities. (*Id*.). Plaintiff had attended school up to the tenth grade in regular education classes, but had dropped out after being held back due to poor grades. (T. 301, 314, 334). He had enrolled in a general equivalency diploma ("GED") program, but did not complete it. (T. 327). Plaintiff had never held full-time employment. He had worked part-time as a receptionist as part of a training program while being treated at Hutchings Psychiatric Center in 2013, and in a

4

temporary position at the New York State Fair in 2012. (T. 245, 334).

Plaintiff reported that he was unable to work due to physical and mental impairments, including right wrist pain, depression, migraines, anxiety, and frequent panic attacks. (T. 35-40, 244, 313). In October 2014, plaintiff had surgery to address an unstable distal radio-ulna joint ("DRUJ") in his right wrist that was believed to have resulted from a childhood injury. (T. 37, 505). Post-operative treatment notes documented improvement in the wrist's range of motion and stability, but that plaintiff was still lacking in significant supination[1], due in part to poor attendance at physical therapy. (T. 500-502). At his March 2014 hearing, plaintiff was wearing a splint on his right wrist, and testified that he still had pain and difficulty lifting with his right hand. (T. 38).

The record shows that plaintiff had never been hospitalized for his mental health impairments, but had received regular psychiatric treatment since July 2011.[2] (T. 313-33, 341-493). He had seen a variety of mental health professionals, and had been variously diagnosed with bipolar disorder, a learning disorder, depression, anxiety, and anger management issues. (T. 316, 332, 354, 590). He frequently argued with his psychiatrists and counselors over the proper treatment approach, the extent of his progress, and his refusal to take psychiatric medication. (T. 341, 368, 370, 388, 442,

---

[1] Supination is the rotation of the forearm and hand so that the palm faces forward or upward and the radius lies parallel to the ulna. https://www.merriam-webster.com/dictionary/supination

[2] Plaintiff had previously applied for SSI and child's insurance benefits in January 2010, and had alleged a learning disability and borderline intellectual functioning. ALJ Thomas Tielen's May 3, 2011 decision on that application, which was included as part of the record in this case, does not describe any prior psychiatric treatment. (T. 52-66).

5

452, 465).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 16-20). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

The ALJ determined that plaintiff had not engaged in substantial gainful activity since May 4, 2011, the day after the denial of a prior application for benefits. (T. 15). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: residuals of a right wrist repair and a mental impairment (variously characterized). (T. 16). The ALJ noted that the mental health professionals had offered a variety of diagnoses, including bipolar disorder, a learning disorder, depression, an unspecified intellectual disability, and anxiety. (*Id*.). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 16-18).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform less than the full range of light work. (T. 18-20). Taking plaintiff's wrist injury into account, the ALJ found that plaintiff could lift and carry up to twenty pounds occasionally and up to ten pounds frequently, with no other exertional limitations. (T. 18-19). In light of plaintiff's mental limitations, the ALJ found that plaintiff could understand and follow simple instructions and directions; could perform simple tasks

independently, could maintain attention and concentration for simple tasks; could regularly attend to a routine and maintain a schedule; and could handle simple, repetitive work-related stress, defined as making occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that did not require plaintiff to supervise or manage the work of others. (*Id*.). The ALJ also found that plaintiff should avoid work requiring more complex interaction or joint effort to achieve work goals, and should have no contact with the public. (*Id*.).

In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 18). Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible in light of the record evidence. (T. 19-20). The ALJ next determined that plaintiff had no past relevant work. (T. 20). Relying on the VE testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 21-22). Accordingly, the ALJ determined that plaintiff was not disabled from the onset date through the date of the decision, and denied

plaintiff's application for child's insurance benefits[3] and SSI. (T. 22).

## V. ISSUES IN CONTENTION

Plaintiff raises the following arguments:

(1) The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical evidence. (Pl.'s Br. at 12-15) (Dkt. No. 9).

(2) The ALJ failed to fully and fairly develop the record because she did not order that plaintiff undergo intelligence testing to determine whether plaintiff had an intellectual disability that affected his ability to perform substantial gainful activity. (Pl.'s Br. at 15-16).

(3) The ALJ's Step 5 determination was not supported by substantial evidence. (Pl.'s Br. at 17).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 7-12) (Dkt. No. 10). For the following reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI. RFC EVALUATION

### A. Legal Standards

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an

---

[3] Plaintiff would have been entitled to child's insurance benefits if he were found to have had a disability that began before he reached the age of 22. 20 C.F.R. § 404.350(5).

equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

**B. Application**

Plaintiff does not challenge the ALJ's assessment of his physical limitations. However, plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's mental impairments, particularly the evidence regarding plaintiff's social functioning, ability to handle stress, and ability to make appropriate decisions.

(Pl.'s Br. at 12-13). This court disagrees, and concludes that the ALJ's assessment of plaintiff's mental impairments was supported by substantial evidence.

As noted above, the ALJ limited plaintiff to simple, routine, and repetitive tasks. (T. 18-20). In reaching the mental RFC determination, the ALJ gave "considerable weight" to the opinion of Dr. S. Shapiro, the state agency psychological consultant, who concluded that plaintiff could perform simple work so long as it required only limited contact with the general public.[4] (T. 20, 73). The state agency consultant based his opinion on his review of the available medical records, including Dr. Jeanne Shapiro's consultative psychiatric examination report. (T. 69, 73).

Plaintiff contends that the ALJ erred in assigning the state consultant's opinion considerable weight, because the opinion came from a non-examining source. (Pl.'s Br. at 12). However, a non-examining state agency consultant's opinion may be relied upon where it is supported by other record evidence. *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

---

[4] Dr. S. Shapiro's opinion was less restrictive than the ALJ's ultimate RFC determination, which found that plaintiff was limited to work that involved no contact with the public. (T. 18, 46).

10

Plaintiff also argues that the state consultant's January 2, 2014 opinion should have been discounted because it necessarily omits plaintiff's psychiatric treatment record between January 2014 and May 2015.[5] (Pl.'s Br. at 15). Plaintiff has not identified any evidence post-dating the state consultant's review that would contradict the ALJ's finding that Dr. S. Shapiro's opinion was "generally consistent with the objective evidence of record." (T. 20). Instead, plaintiff argues that, although some medical records were provided to the consultant, it is unclear whether the state consultant was aware of an October 2013 incident, documented in the treatment notes, in which plaintiff "tried to fight" a treating physician. (T. 481-82). However, even though the state consultant does not mention this specific incident, Dr. S. Shapiro referenced plaintiff's well-documented difficulties in social functioning, and still opined that plaintiff was capable of performing simple work that required limited contact with the general public. (T. 73). Likewise, plaintiff has not identified any subsequent medical evidence that would suggest that Dr. S. Shapiro's opinion would have been more restrictive[6] if the information had been available. *See Camille v.*

---

[5] The ALJ stated that Dr. S. Shapiro's opinion was "rendered after a thorough review of the entirety of the evidence by a physician with extensive program and professional expertise." (T. 20). Plaintiff argues that this overstates the record evidence available to the state agency consultant, due to the timing of his review. Given the remainder of the ALJ's analysis, this court concludes that her description of scope of the medical evidence available to Dr. S. Shapiro was merely inartful wording. However, even if the ALJ had erred in describing the scope of the state agency consultant's review, such error would be harmless, given the consistency between Dr. S. Shapiro's opinion and the record as a whole.

[6] In fact, the ALJ cited subsequent treatment records that reflected "significant improvement" in plaintiff's ability to handle his anger, despite inconsistent attendance at counseling sessions and noncompliance with recommended treatment. (T. 19, 331). Plaintiff's counselors also encouraged him to pursue potential employment opportunities at local grocery stores or to return to a GED program,

*Colvin*, 104 F. Supp.3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25, 28-29 (2d Cir. 2016) (ALJ did not err in assigning great weight to state consultant's opinion where later treatment notes were not materially different from the medical records reviewed by the consultant). Therefore, this court cannot conclude that the state consultant's opinion was rendered "stale" by subsequent medical records, or that the ALJ erred in assigning that opinion considerable weight. *See Liberatore v. Colvin*, No. 5:15-CV-1483 (GTS), 2016 WL 7053443, at *7 (N.D.N.Y. Dec. 5, 2016).

The ALJ also gave "some weight" to the December 23, 2013 opinion of Dr. Jeanne Shapiro, who performed plaintiff's consultative psychiatric examination. (T. 20). Plaintiff argues that Dr. Jeanne Shapiro provided the only psychiatric opinion from an examining source, and therefore the ALJ should have assigned her report greater weight. (Pl.'s Br. at 13-14). Dr. Jeanne Shapiro opined that plaintiff appeared to have mild limitations in understanding and following simple instructions and directions; mild to moderate limitations performing simple tasks; moderate to marked limitations performing complex tasks; mild limitations maintaining attention and concentration; moderate limitations regarding his ability to attend to a routine and maintain a schedule; and mild to moderate limitations regarding his ability to learn new tasks. (T. 337). Dr. Jeanne Shapiro further opined that plaintiff had moderate to marked limitations in his ability to make appropriate decisions and to deal with stress, and had marked limitations in his ability to relate to and interact well with others. (*Id*.).

---

which would suggest fewer limitations with regard to social functioning than found by the state agency consultant in January 2014. (T. 392, 395, 398, 406, 420, 430, 444).

The ALJ provided several reasons for assigning less weight to the consultative examiner's opinion. First, she discounted the consultative examiner's reliance on plaintiff's own description of his symptoms, due to questions about plaintiff's credibility. (T. 20). For example, the ALJ noted that plaintiff reported that he had been depressed most of his life, but had only sought mental health treatment after a prior application for benefits was denied. (T. 19). In addition, plaintiff had been largely noncompliant with recommended treatment, and had missed numerous counseling appointments. (*Id*.). The ALJ also referenced treatment notes that described plaintiff as questioning whether he had to stay for the entire session to "get credit" under a state Jobs Plus program, and requesting that a counselor sign a form that overstated plaintiff's attendance at weekly counseling sessions. (T. 19, 443, 452).

In addition, the ALJ found that Dr. Jeanne Shapiro's findings did not reflect the improvement in plaintiff's anger management described in treatment notes, and that her most restrictive findings were not supported by "consistent" treating source evidence. (T. 20). The ALJ also described Dr. Jeanne Shapiro's examination notes, which were inconsistent with her findings of extreme limitations. (T. 19). For example, plaintiff was cooperative during the consultative examination, and displayed an adequate manner of relating, social skills, and overall presentation. (T. 336). His attention and concentration was intact, and he did not demonstrate any recent or remote memory deficits. (*Id*.). Because the ALJ provided record support for her determination, this court concludes that her decision to assign less weight to Dr. Jeanne Shapiro's opinion was supported by substantial evidence.

13

## VII. DEVELOPING THE ADMINISTRATIVE RECORD

### A. Legal Standard

It is well-settled that, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ has an affirmative duty to develop the record, whether or not a plaintiff is represented. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). Prior to March of 2012, the regulations provided that when the treating physician's report contained "a conflict or ambiguity" that must be resolved, the ALJ was required to "seek additional evidence or clarification" from that source in order to fill in any clear gaps before rejecting the doctor's opinion. *Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 504-505 (S.D.N.Y. 2014) (citing, *inter alia, Correale Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010); 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (2010)). This duty arose if the physician's report was "insufficiently explained, lacking in support, or inconsistent with the physician's other reports." *Id.*

Effective March 26, 2012, the Commissioner amended 20 C.F.R. §§ 404.1512 (e)(1) and 416.912(e)(1) to remove former paragraph (e), together with the duty that it imposed on the ALJ to re-contact the treating physician under certain circumstances. *Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (citing How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (codified at 20 C.F.R. § 416.912) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e)). The court applies the section in effect when the ALJ adjudicated plaintiff's claim. *Id.* The ALJ's decision in this case is dated November 24, 2015, thus, the new section applies.

14

The new section allows the ALJ to choose the appropriate method for resolving insufficiencies or inconsistencies, which is designed to afford adjudicators "more flexibility." *Perrin v. Astrue*, No. 11-CV-5110, 2012 WL 4793543, at *3 n.3 (E.D.N.Y. Oct. 9, 2012) (citing How We Collect and Consider Evidence of Disability, *supra*). The ALJ must attempt to resolve the inconsistency or insufficiency by taking one or more of the following approaches:

> (1) recontacting the treating physician or other medical source, (2) requesting additional existing records, (3) asking the claimant to undergo a consultative examination, or (4) asking the claimant or others for further information.

*Id*. (citing 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4)). Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the plaintiff's RFC. *Covey v. Colvin*, No. 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)).

### B. Application

After the consultative examination, Dr. Jeanne Shapiro found that plaintiff's intellectual functioning was in the deficient range, possibly indicating a mild intellectual disability. (T.337). Plaintiff argues that the ALJ should have further developed the administrative record by ordering a consultative examination to assess plaintiff's intellectual functioning, and to rule out an intellectual disability. (Pl.'s Br. at 11-12).

An ALJ is not required to order a consultative examination if the facts do not

warrant or suggest the need for it. *Lefever v. Astrue*, No. 5:07–CV–622 (NAM/DEP), 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd* 443 F. App'x 608 (2d Cir. 2011); *see also Yancey v. Apfel*, 145 F.3d 106, 114 (2d Cir.1998). In this case, plaintiff attended regular education classes throughout school. (T. 334). Although plaintiff had poor grades and was held back a year, he reported that he had actually quit school due to being bullied by classmates and mistreated by staff. (T. 301, 327, 348). Plaintiff had failed to complete a GED course, but attributed this to financial difficulties rather than intellectual struggles. (T. 327). Plaintiff's counselors also regularly encouraged him to consider returning to a GED program, and did not express any concerns about his intellectual ability to complete the necessary coursework. (T. 430, 444, 446). While plaintiff testified that he had difficulty with math and English at school, he has not identified any work-related functional limitations resulting from these academic difficulties. Therefore, this court cannot conclude that the ALJ was obligated to send plaintiff for an additional consultative examination, or to take any other measures to further assess his intellectual functioning. *See Gorman v. Colvin*, No. 14-CV-103, 2015 WL 1383823, at *4 (N.D.N.Y. Mar. 25, 2015) ("Plaintiff fails to point to evidence during the relevant period showing that her intellectual capacity precluded her from engaging in simple, routine, and repetitive unskilled work activities, and therefore the ALJ had no duty to order a consultive intellectual evaluation.").

## VIII. VOCATIONAL EXPERT

### A. Legal Standards

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate

16

that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed). This definition emphasizes "that . . . a type[] of job which exists only in very limited numbers or in relatively few geographic locations may not be said to 'exist in the national economy.'" *Id.* However, what constitutes a "significant" number is "fairly minimal." *Id.* (quoting *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is

inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments[7] are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

If the ALJ utilizes a VE at the hearing, the VE is generally asked a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id*. at 276-277.

---

[7] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

18

**B.     Application**

Because the ALJ found that plaintiff's nonexertional limitations would narrow the range of work that plaintiff could perform, the ALJ utilized the services of a VE. (T. 46-50).  The ALJ asked the VE to assume an individual of plaintiff's age, education, and work experience who: could lift and carry twenty pounds occasionally and ten pounds frequently; retained the ability to understand and follow simple instructions and directions and to perform simple tasks independently; could maintain attention and concentration for simple tasks; could regularly attend to a routine and maintain a schedule; could maintain attention and concentration for simple tasks; could handle simple, repetitive, work-related stress and could make occasional decisions directly related to the performance of simple tasks in a position that did not require supervision or management of others. (T. 46).  The individual should avoid work that required more complex interaction or joint effort to achieve work goals, and could have no contact with the public. (*Id*.).  The VE testified that there were several representative occupations in the national economy that such an individual could perform. (T. 47).

Plaintiff argues that because the ALJ erred with respect to her RFC analysis, the hypothetical question did not take all of plaintiff's physical and mental limitations into account. (Pl.'s Br. at 15).  However, because this court has found that the ALJ's findings regarding plaintiff's RFC were supported by substantial evidence, her hypothetical question that mirrored the RFC and the resulting reliance upon the VE testimony were similarly supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: January 6, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge